THE STATE OF OHIO, APPELLANT, *v.* DURKIN, APPELLEE.

(No. 80-716—Decided May 13, 1981.)

*Mr. J. Walter Dragelevich,* prosecuting attorney, *Mr. Dennis Watkins* and *Mr. Peter J. Kontos,* for appellant.

*Mr. Samuel Petkovich* and *Mr. Mark Gregorich,* for appellee.

*Per Curiam.* The state asserts that the Court of Appeals erred in reversing appellee's conviction for murder. We agree.

The trial judge, in instructing the jury on the lesser included offense of voluntary manslaughter, stated, in part, that:

"Voluntary manslaughter is knowingly causing the death of another while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite the defendant into using deadly force.

"Before the state of Ohio is entitled to a verdict in which you would find the defendant, James L. Durkin, guilty of the lesser crime of voluntary manslaughter, the state of Ohio must establish certain elements of this lesser crime. In this case, therefore, the state of Ohio must establish beyond a reasonable doubt each and everyone [*sic*] of the following essential facts

before you would be warranted in finding this defendant guilty of the lesser crime of voluntary manslaughter in the death of James W. Spencer.

"First: That James W. Spencer was a living person and that his death was caused by the defendant in Trumbull County, Ohio, on or about the 27th day of June, 1977.

"Second: That the killing was done knowingly.

"Third: And that the act causing death was performed while the defendant was under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force."

This instruction was clearly erroneous. Extreme emotional stress is not an element of the crime of voluntary manslaughter. Rather, extreme emotional stress is a circumstance which mitigates a defendant's criminal culpability. *State* v. *Muscatello* (1978), 55 Ohio St. 2d 201, paragraph two of the syllabus.

In *Muscatello,* the trial court had instructed the jury that extreme emotional stress was an element of the crime of voluntary manslaughter and that the state had to prove that element beyond a reasonable doubt. In holding that the instruction was erroneous, this court, at pages 203-204, stated that "where a defendant originally has been charged with aggravated murder or murder, the prosecution can be expected to endeavor to prove the elements of the highest offense; it will attempt to disprove the mitigating circumstance. Because only the defendant will gain by establishing the mitigating circumstance, he alone will be concerned with showing its existence. Therefore, the import of the instruction is as if the trial court had instructed the jurors that appellee bore the burden of establishing the presence of the described emotional stress by proof beyond a reasonable doubt."

While we find that the jury instruction was erroneous, we also find that the Court of Appeals erred in reversing appellee's murder conviction for two reasons. First, appellee waived any error in the jury instruction by failing to timely object thereto. Second, appellee was not entitled to a jury instruction on the offense of voluntary manslaughter because he failed to elicit any evidence of the mitigating circumstance of

extreme emotional stress. Therefore, he could not have been prejudiced by the erroneous instruction.

Crim. R. 30 provides, in part, that, "[a] party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection." Defense counsel, in the instant cause, did not object to the erroneous instruction on involuntary manslaughter until appeal. While Crim. R. 52(B) provides that a court may take notice of plain errors that affect substantial rights although not brought to the attention of the court, this court held in *State* v. *Long* (1978), 53 Ohio St. 2d 91, paragraph two of the syllabus, that a jury instruction which improperly places the burden of proof "does not constitute a plain error or defect under Crim. R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." Because of our determination that appellee was not entitled to a jury instruction on the lesser included offense of voluntary manslaughter, the record fails to contain a plain error or defect within the meaning of Crim. R. 52(B).

In *Muscatello, supra,* this court held in paragraph five of the syllabus that, "[a]n act committed while under the extreme emotional stress described in R. C. 2903.03(A), is one performed under the influence of sudden passion or in the heat of blood, without time and opportunity for reflection or for passions to cool."* Appellee, in the instant cause, failed to offer any evidence of extreme emotional stress and therefore was not entitled to a jury instruction on the offense of voluntary manslaughter.

Appellee killed the victim, a totally innocent stranger, either for no reason at all or for the sole reason that the victim was black and that 11 days earlier a group of young blacks had killed his uncle. There is no evidence here of a sudden heat of passion without time for reflection. There is no evidence of any, let alone serious, provocation to incite appellee into using deadly force. Appellee's alcoholism, his marital problems, and

---

* R. C. 2903.03(A) provides:

"No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

162

his uncle's death, while unfortunate, are not the type of mitigating circumstances that give rise to a claim of extreme emotional stress. See *State* v. *Pierce* (1980), 64 Ohio St. 2d 281, 283-284, where we held that defendant was not entitled to an instruction on voluntary manslaughter.

For the foregoing reasons the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.